PHILLIP A. TALBERT
United States Attorney
VERONICA M.A. ALEGRÍA
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                      Plaintiff,<br><br>       v.<br><br>DARNELL RAY OWENS,<br><br>                      Defendant. | CASE NO.  2:19-CR-00058 TLN<br><br>PLEA AGREEMENT |

### I.     INTRODUCTION

**A.     Scope of Agreement.**

The indictment in this case charges the defendant with violations of 18 U.S.C. § 876(c) – Mailing Threatening Communications (Counts One, Two, and Three), 18 U.S.C. § 1038(a) – False Information and Hoaxes (Counts Four and Five), and 18 U.S.C. § 1028A(a)(1) – Aggravated Identity Theft (Counts Six and Seven).  This document contains the complete plea agreement between the United States Attorney's Office for the Eastern District of California (the "government") and the defendant regarding this case.  This plea agreement is limited to the United States Attorney's Office for the Eastern District of California and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities.

PLEA AGREEMENT                                                          1

**B.     Court Not a Party.**

The Court is not a party to this plea agreement.  Sentencing is a matter solely within the discretion of the Court, and the Court may take into consideration any and all facts and circumstances concerning the criminal activities of defendant, including activities which may not have been charged in the indictment.  The Court is under no obligation to accept any recommendations made by the government, and the Court may in its discretion impose any sentence it deems appropriate up to and including the statutory maximum stated in this plea agreement.

If the Court should impose any sentence up to the maximum established by the statutes of conviction, the defendant cannot, for that reason alone, withdraw his guilty plea, and he will remain bound to fulfill all of the obligations under this plea agreement.  The defendant understands that neither the prosecutor, defense counsel, nor the Court can make a binding prediction or promise regarding the sentence he will receive.

## II.     DEFENDANT'S OBLIGATIONS

**A.     Guilty Plea.**

The defendant will plead guilty to Counts Two, Three, Four, and Seven.  The defendant agrees that he is in fact guilty of these charges and that the facts set forth in the Factual Basis for Plea attached hereto as Exhibit A are accurate.

The defendant agrees that this plea agreement will be filed with the Court and become a part of the record of the case.  The defendant understands and agrees that he will not be allowed to withdraw his pleas should the Court not follow the government's sentencing recommendations.

The defendant agrees that the statements made by him in signing this Agreement, including the factual admissions set forth in the factual basis, shall be admissible and useable against the defendant by the United States in any subsequent criminal or civil proceedings, even if the defendant fails to enter a guilty plea pursuant to this Agreement.  The defendant waives any rights under Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410, to the extent that these rules are inconsistent with this paragraph or with this Agreement generally.

**B.     Restitution.**

The Mandatory Victim Restitution Act requires the Court to order restitution to the victims of

certain offenses. Defendant agrees that his conduct is governed by the Mandatory Restitution Act pursuant to 18 U.S.C. §§ 1038(c), 3663A(c)(1)(A)(i) & (ii), and 3663A(c)(1)(B) and agrees to pay the full amount of restitution to all victims affected by these offenses, including, but not limited to, the victims covered in the factual basis, victims covered in those counts to be dismissed as part of the plea agreement pursuant to 18 U.S.C. § 3663A(a)(3), and other victims as a result of the defendant's conduct for the offenses charged and all relevant conduct from January 2018 through March 2019.

### C. Fine.

The defendant reserves the right to argue to Probation and at sentencing that he is unable to pay a fine, and that no fine should be imposed. The defendant understands that it is his burden to affirmatively prove that he is unable to pay a fine, and agrees to provide a financial statement under penalty of perjury to the Probation Officer and the government in advance of the issuance of the draft Presentence Investigation Report, along with supporting documentation. The government retains the right to oppose the waiver of a fine. If the Court imposes a fine, the defendant agrees to pay such fine if and as ordered by the Court, up to the statutory maximum fine for the defendant's offenses.

### D. Special Assessment.

The defendant agrees to pay a special assessment of $400 at the time of sentencing by delivering a check or money order payable to the United States District Court to the United States Probation Office immediately before the sentencing hearing. The defendant understands that this plea agreement is voidable at the option of the government if he fails to pay the assessment prior to that hearing. If the defendant is unable to pay the special assessment at the time of sentencing, he agrees to earn the money to pay the assessment, if necessary by participating in the Inmate Financial Responsibility Program.

### E. Violation of Plea Agreement by Defendant/Withdrawal of Plea(s).

If the defendant violates this plea agreement in any way, withdraws his plea, or tries to withdraw his plea, this plea agreement is voidable at the option of the government. If the government elects to void the agreement based on the defendant's violation, the government will no longer be bound by its representations to the defendant concerning the limits on criminal prosecution and sentencing as set forth herein. A defendant violates the plea agreement by committing any crime or providing or procuring any statement or testimony which is knowingly false, misleading, or materially incomplete in

any litigation or sentencing process in this case, or engages in any post-plea conduct constituting obstruction of justice.  Varying from stipulated Guidelines application or agreements regarding arguments as to 18 United States Code section 3553, as set forth in this agreement, personally or through counsel, also constitutes a violation of the plea agreement.  The government also shall have the right (1) to prosecute the defendant on any of the counts to which he pleaded guilty; (2) to reinstate any counts that may be dismissed pursuant to this plea agreement; and (3) to file any new charges that would otherwise be barred by this plea agreement.  The defendant shall thereafter be subject to prosecution for any federal criminal violation of which the government has knowledge.  The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

By signing this plea agreement, the defendant agrees to waive any objections, motions, and defenses that the defendant might have to the government's decision.  Any prosecutions that are not time-barred by the applicable statute of limitations as of the date of this plea agreement may be commenced in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this plea agreement and the commencement of any such prosecutions.  The defendant agrees not to raise any objections based on the passage of time with respect to such counts including, but not limited to, any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment to any counts that were not time-barred as of the date of this plea agreement.  The determination of whether the defendant has violated the plea agreement will be under a probable cause standard.

In addition, (1) all statements made by the defendant to the government or other designated law enforcement agents, or any testimony given by the defendant before a grand jury or other tribunal, whether before or after this plea agreement, shall be admissible in evidence in any criminal, civil, or administrative proceedings hereafter brought against the defendant; and (2) the defendant shall assert no claim under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule, that statements made by the defendant before or after this plea agreement, or any leads derived therefrom, should be suppressed. By signing this plea agreement, the defendant waives any and all rights in the foregoing respects.

**F.      Asset Disclosure.**

The defendant agrees to make a full and complete disclosure of his assets and financial condition, and will complete the United States Attorney's Office's "Authorization to Release Information" and "Financial Affidavit" within five (5) weeks from the entry of the defendant's change of plea, including supporting documentation.  The defendant also agrees to have the Court enter an order to that effect.  The defendant understands that if he fails to complete truthfully and provide the described documentation to the United States Attorney's office within the allotted time, he will be considered in violation of the agreement, and the government shall be entitled to the remedies set forth in section II.E above, above.

**G.      Prohibition on Contact with Victims.**

The defendant agrees that as a special condition of his supervised release, he shall have no contact with any of the victims affected by his offenses, including, but not limited to, the victims covered in the factual basis, and other victims as a result of the defendant's conduct, with the sole exception of Person 7.

### III.      THE GOVERNMENT'S OBLIGATIONS

**A.      Dismissals/Other Charges.**

The government agrees to move, at the time of sentencing, to dismiss without prejudice the remaining counts in the pending indictment.  The government also agrees not to reinstate any dismissed count except if this agreement is voided as set forth herein, or as provided in paragraphs II.E (Violation of Plea Agreement by Defendant/Withdrawal of Plea(s)), and VII.B (Waiver of Appeal and Collateral Attack) herein.

**B.      Recommendations.**

   1.      Incarceration Range.

The government will recommend that the defendant be sentenced at the low end of the applicable guideline range (including the application of the mandatory statutory minimum consecutive term) as determined by the Court.

   2.      Acceptance of Responsibility.

The government will recommend a two-level reduction (if the offense level is less than 16) or a

PLEA AGREEMENT                                        5

three-level reduction (if the offense level reaches 16) in the computation of his offense level if the defendant clearly demonstrates acceptance of responsibility for his conduct as defined in U.S.S.G. § 3E1.1.  This includes the defendant meeting with and assisting the probation officer in the preparation of the pre-sentence report, being truthful and candid with the probation officer, and not otherwise engaging in conduct that constitutes obstruction of justice within the meaning of U.S.S.G § 3C1.1, either in the preparation of the pre-sentence report or during the sentencing proceeding.

C. **Use of Information for Sentencing.**

The government is free to provide full and accurate information to the Court and Probation, including answering any inquiries made by the Court and/or Probation and rebutting any inaccurate statements or arguments by the defendant, his attorney, Probation, or the Court.  The defendant also understands and agrees that nothing in this Plea Agreement bars the government from defending on appeal or collateral review any sentence that the Court may impose.

### IV. ELEMENTS OF THE OFFENSE

At a trial, the government would have to prove beyond a reasonable doubt the following elements of the offense(s) to which the defendant is pleading guilty.  The defendant fully understands the nature and elements of the crimes charged in the indictment to which he is pleading guilty, together with the possible defenses thereto, and has discussed them with his attorney.

A. **Mailing Threatening Communications, in violation of 18 U.S.C. § 876(c) [Counts Two and Three].**

The elements of Mailing Threatening Communications in violation of 18 U.S.C. § 876(c) are as follows:

(1) The defendant knowingly mailed a letter addressed to a natural person containing a threat to injure any person; and

(2) The letter was transmitted for the purpose of issuing a threat, or with knowledge that the letter would be viewed as a threat.

B. **False Information and Hoaxes, in violation of 18 U.S.C. § 1038(a) [Count Four].**

The elements of False Information and Hoaxes in violation of 18 U.S.C. § 1038(a) are as follows:

(1) The defendant intentionally conveyed false or misleading information;

(2) The information was conveyed under circumstances where a reasonable person could believe it; and

(3) The information, if true, would have indicated that an activity had taken, was taking, or would take place that would constitute a violation of Chapter 10 of the United States Code.

With respect to the third element, in this case, the information conveyed by the defendant (a letter containing threats and a white powdery substance), if true, would have indicated that an activity had taken place that would constitute a violation of 18 U.S.C. § 175(a) ("Prohibitions with respect to biological weapons"). 18 U.S.C. § 175(a) provides that "[w]hoever knowingly . . . transfers . . . any biological agent, toxin, or delivery system for use as a weapon, . . . or attempts, threatens, or conspires to do the same," is guilty of an offense against the laws of the United States. 18 U.S.C. § 175(a). Section 175(c) provides that "[f]or purposes of this section, the term 'for use as a weapon' includes the development, production, transfer, acquisition, retention, or possession of any biological agent, toxin, or delivery system for other than prophylactic, protective, bona fide research, or other peaceful purposes." 18 U.S.C. § 175(c).

**C.      Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A [Count Seven].**

The elements of Aggravated Identity Theft in violation of 18 U.S.C. § 1028A are as follows:

(1) The defendant knowingly transferred or used a means of identification of another person without legal authority;

(2) The defendant knew the means of identification belonged to a real person; and

(3) The defendant did so in relation to a felony violation enumerated in 18 U.S.C. § 1028A(c).

With respect to the third element, in this case, the defendant committed aggravated identity theft in relation to the crime of sending a letter containing false information and a hoax involving biological weapons, in violation 18 U.S.C. § 1038(a), as charged in Count Four of the indictment. The elements of the offense of False Information and Hoaxes in violation of 18 U.S.C. § 1038(a) are as follows:

(1) The defendant intentionally conveyed false or misleading information;

(2) The information was conveyed under circumstances where a reasonable person could believe it; and

(3) The information, if true, would have indicated that an activity had taken, was taking, or would take place that would constitute a violation of Chapter 10 of the United States Code.

With respect to the third element, in this case, the information conveyed by the defendant (a letter containing threats and a white powdery substance), if true, would have indicated that an activity had taken place that would constitute a violation of 18 U.S.C. § 175(a) ("Prohibitions with respect to biological weapons"). 18 U.S.C. § 175(a) provides that "[w]hoever knowingly . . . transfers . . . any biological agent, toxin, or delivery system for use as a weapon, . . . or attempts, threatens, or conspires to do the same," is guilty of an offense against the laws of the United States. 18 U.S.C. § 175(a). Section 175(c) provides that "[f]or purposes of this section, the term 'for use as a weapon' includes the development, production, transfer, acquisition, retention, or possession of any biological agent, toxin, or delivery system for other than prophylactic, protective, bona fide research, or other peaceful purposes." 18 U.S.C. § 175(c).

### V.  MAXIMUM SENTENCE

**A.  Maximum Penalty.**

The maximum sentences that the Court can impose in connection with the counts to which the defendant will plead guilty pursuant to this agreement are as follows:

    1.  Counts Two, and Three – Mailing Threatening Communications in violation of 18 U.S.C. § 876(c)

The maximum sentence that the Court can impose on Counts Two and Three is five (5) years of incarceration, a fine of $250,000, a three (3) year period of supervised release, and a special assessment of $100.

    2.  Count Four – False Information and Hoaxes in violation of 18 U.S.C. § 1038(a)

The maximum sentence that the Court can impose on Counts Four and Five is five (5) years of incarceration, a fine of $250,000, a three (3) year period of supervised release, and a special assessment of $100.

    3.  Count Seven – Aggravated Identity Theft in violation of 18 U.S.C. § 1028A

The mandatory penalty for aggravated identity theft in violation of 18 U.S.C. § 1028A is a mandatory term of two (2) years of imprisonment to run consecutive to any other term of imprisonment,

a fine of $250,000, a one (1) year period of supervised release, and a special assessment of $100.

By signing this plea agreement, the defendant also agrees that the Court can order the payment of restitution for the full loss caused by the defendant's wrongful conduct. The defendant agrees that the restitution order is not restricted to the amounts alleged in the specific count(s) to which he is pleading guilty. The defendant further agrees, as noted above, that he will not attempt to discharge in any present or future bankruptcy proceeding any restitution imposed by the Court.

### B. Violations of Supervised Release.

The defendant understands that if he violates a condition of supervised release at any time during the term of supervised release, the Court may revoke the term of supervised release and require the defendant to serve up to 2 additional years of imprisonment.

## VI. SENTENCING DETERMINATION

The defendant understands that the Court must consult the Federal Sentencing Guidelines and must take them into account when determining a final sentence. The defendant understands that the Court will determine a non-binding and advisory guideline sentencing range for this case pursuant to the Sentencing Guidelines and must take them into account when determining a final sentence. The defendant further understands that the Court will consider whether there is a basis for departure from the guideline sentencing range (either above or below the guideline sentencing range) because there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines. The defendant further understands that the Court, after consultation and consideration of the Sentencing Guidelines, must impose a sentence that is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a).

The defendant is free to recommend whatever sentence he believes is appropriate under 18 U.S.C. § 3553(a).

## VII. WAIVERS

### A. Waiver of Constitutional Rights.

The defendant understands that by pleading guilty he is waiving the following constitutional rights: (a) to plead not guilty and to persist in that plea if already made; (b) to be tried by a jury; (c) to be assisted at trial by an attorney, who would be appointed if necessary; (d) to pursue any affirmative

defenses, Fourth Amendment or Fifth Amendment claims, constitutional challenges to the statutes of conviction, and other pretrial motions that have been filed or could be filed; (e) to subpoena witnesses to testify on his behalf; (f) to confront and cross-examine witnesses against him; and (g) not to be compelled to incriminate himself.

### B. **Waiver of Appeal and Collateral Attack.**

The defendant understands that the law gives the defendant a right to appeal his guilty plea, conviction, and sentence. The defendant agrees as part of his plea(s), however, to give up the right to appeal the guilty plea, conviction, and the sentence imposed in this case as long as the sentence does not exceed the statutory maximums for the offenses to which he is pleading guilty. The defendant understands that this waiver includes, but is not limited to, any and all constitutional and/or legal challenges to the defendant's conviction and guilty plea, including arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts attached to this agreement is insufficient to support the defendant's plea of guilty. The defendant specifically gives up the right to appeal any order of restitution the Court may impose.

Notwithstanding the defendant's waiver of appeal, the defendant will retain the right to appeal if one of the following circumstances occurs: (1) the sentence imposed by the District Court exceeds the statutory maximum; and/or (2) the government appeals the sentence in the case. The defendant understands that these circumstances occur infrequently and that in almost all cases this Agreement constitutes a complete waiver of all appellate rights.

In addition, regardless of the sentence the defendant receives, the defendant also gives up any right to bring a collateral attack, including a motion under 28 U.S.C. § 2255 or § 2241, challenging any aspect of the guilty plea, conviction, or sentence, except for non-waivable claims.

Notwithstanding the government's agreements in paragraph III.A above, if the defendant ever attempts to vacate his plea(s), dismiss the underlying charges, or modify or set aside his sentence on any of the counts to which he is pleading guilty, the government shall have the rights set forth in Section II.E herein.

### C. **Waiver of Attorneys' Fees and Costs.**

The defendant agrees to waive all rights under the "Hyde Amendment," Section 617, P.L. 105-

119 (Nov. 26, 1997), to recover attorneys' fees or other litigation expenses in connection with the investigation and prosecution of all charges in the above-captioned matter and of any related allegations (including without limitation any charges to be dismissed pursuant to this plea agreement and any charges previously dismissed).

**D.     Impact of Plea on Defendant's Immigration Status.**

Defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including offense(s) to which the defendant is pleading guilty. The defendant and his counsel have discussed the fact that the charge to which the defendant is pleading guilty is an aggravated felony, or a crime that is likely to be determined to be an aggravated felony under 8 USC § 1101(a)(43), and that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, it is virtually certain that defendant will be removed. Removal and other immigration consequences are the subject of a separate proceeding, however, and defendant understands that no one, including his attorney or the district court, can predict to a certainty the effect of his conviction on his immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is his automatic removal from the United States.

### VIII.     ENTIRE PLEA AGREEMENT

Other than this plea agreement, no agreement, understanding, promise, or condition between the government and the defendant exists, nor will such agreement, understanding, promise, or condition exist unless it is committed to writing and signed by the defendant, counsel for the defendant, and counsel for the United States.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

IX. **APPROVALS AND SIGNATURES**

A. **Defense Counsel.**

I have read this plea agreement and have discussed it fully with my client. The plea agreement accurately and completely sets forth the entirety of the agreement. I concur in my client's decision to plead guilty as set forth in this plea agreement.

Dated: 02/18/2022

*/s/ Jerome Price*
JEROME PRICE
Attorney for Defendant

B. **Defendant:**

I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines that may apply to my case. No other promises or inducements have been made to me, other than those contained in this plea agreement. In addition, no one has threatened or forced me in any way to enter into this plea agreement. Finally, I am satisfied with the representation of my attorney in this case.

Dated: 02/18/2022

*/s/ Darnell Owens as authorized on 2/18/2022*
DARNELL RAY OWENS
Defendant

C. **Attorney for United States:**

I accept and agree to this plea agreement on behalf of the government.

Dated: 2/18/2022

PHILLIP A. TALBERT
United States Attorney

VERONICA M.A. ALEGRÍA
Assistant United States Attorney

PLEA AGREEMENT 12

# EXHIBIT "A"

Beginning no later than early 2018, DARNELL RAY OWENS began sending threatening letters to various individuals, organizations, and law enforcement entities throughout California and the United States via the United State Postal Service. Generally, the letters contain threats to kill police officers, government officials, homosexuals, and white people. Typically, when sending the letters, OWENS used the names and mailing addresses of his acquaintances and relatives as the "sender" information in order to make it appear as though the letters had been sent by those persons.

**Letter Sent to Employees of KTXL Fox40 (Count 2)**

On or about October 20, 2018, in the county of Sacramento, California, OWENS sent a letter via the U.S. Postal Service to KTXL Fox40, 4655 Fruitridge Road, Sacramento, CA 95820. The letter was addressed to Person 2, Person 3, Person 4, and Person 5, who were all employees of Fox40 and natural persons. The letter contained threats to injure Person 2, Person 3, Person 4, and Person 5. In relevant part, the letter reads as follows:

> *I am also going to kill [Person 2], [Person 3], [Person 4], [Person 5], Etc. Allah has commanded me to burn down the news station with fire and murder anyone who comes out with a gun. I am a domestic terror and I am a domestic violence . . . This is a threat and a promise. I am here to kill alot of people in the name of Allah.*

OWENS sent the letter intending to threaten Person 2, Person 3, Person 4, and Person 5 and with the knowledge that the letter would be viewed as a threat. As a result of the letter, Fox40 increased its security.

**Letter Sent to Elected Official 1 (Count 3)**

On or about March 14, 2019, in the county of Sacramento, California, OWENS sent a letter via the U.S. Postal Service to 3053 Freeport Blvd. #238, Sacramento, California, the campaign mailing address for Elected Official 1. The letter was addressed to Elected Official 1, a natural person, and contained a threat to injure Elected Official 1. In relevant part, the letter reads as follows:

> *Dear [Elected Official 1] ([Elected Official 1's Title]) . . . I knew you was going to not charge those corrupt racist cops. You have failed this city and the people. So I am making a threat on your life, I will assassinate you with a bullet to your head, you will not survive I will watch your body shake as the life in you leaves. I will watch your eyes as your soul goes to hell. . . . I will risk my life to kill you.*

OWENS sent the letter intending to threaten Elected Official 1 and with the knowledge that the letter would be viewed as a threat.

**Letter Sent to First Baptist Church Dallas (Count 4)**

On or about July 10, 2018, in the County of Sacramento, OWENS sent a letter via U.S. Postal Service to the First Baptist Church Dallas, P.O. Box 223609, Dallas, TX 75222. The letter was addressed to Person 1, the pastor of the First Baptist Church Dallas and a natural person. The letter contained a threat to injure Person 1. In relevant part, the letter reads as follows:

> *I will assassinate your pastor in the name of Allah, I will burn down Christian churches and genocide your white people . . . This is a threat.*

OWENS sent the letter intending to threaten Person 1 and with the knowledge that the letter would be viewed as a threat.

Along with the threatening letter, OWENS included in the envelope a white powdery substance. OWENS intended that the white powder would appear to be a biological agent or toxin to the person opening the threatening letter.

As a result of the letter, first responders were called to the First Baptist Church Dallas to respond to and investigate a potential biological attack. First Baptist Church Dallas increased its security. In addition, the staff member who opened the letter containing the threatening letter and white powder became scared and had to be seen by medics.

**Letter Sent to County of Sacramento Department of Revenue Recovery (Count 7)**

On or about August 1, 2018, in the county of Sacramento, California, OWENS sent a letter via U.S. Postal Service to the County of Sacramento Department of Revenue Recovery, PO Box 1086, Sacramento, CA, 95812-1086. The letter contained threats to burn down the Department of Revenue Recovery and kill white people. In relevant part, the letter reads as follows:

> *Dear County of Sacramento Department of Revenue Recovery*
>
> *Yahweh has sent me to destroy all Esau/Edomites, so-called white people. I will erase all white power in the world I will burn down the department of Revenue Recovery and kill alot of people. I am a Hebrew warrior and a domestic terrorist.*

Along with the threatening letter, OWENS included in the envelope a white powdery substance. Upon opening the letter, the white powder fell onto the hands of the Sacramento Department of Revenue Recovery employee who opened the envelope. As a result, the employee became scared and suffered from stress-related symptoms for several days afterward. As a result of the letter, first responders were called to the Department of Revenue Recovery to respond to and investigate a potential biological attack. OWENS intended that the white powder would appear to be a biological agent or toxin to the person opening the letter.

When OWENS mailed the threatening letter containing the white powder substance to the Sacramento Department of Revenue Recovery on or about August 1, 2018, OWENS wrote the name and address of Person 7 in the upper left-hand corner of the envelope in the space for the "sender" information. OWENS intended that the letter would appear to have been sent by Person 7. Person 7 is OWENS' relative, and OWENS knew that Person 7 was a real person.

*I have read and carefully reviewed the above factual basis for my plea with my attorney. I agree that as it concerns my conduct, it is correct.*

Dated:  02/18/2022                              */s/ Darnell Owens as authorized on 2/18/2022*
                                                DARNELL RAY OWENS
                                                Defendant